LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY, LTD., v. JONES.

4-7352                                      180 S. W. 2d 519

Opinion delivered May 8, 1944.

238

*Verne McMillen,* for appellant.

*Claude M. Erwin,* for appellee.

SMITH, J. This is a suit on an insurance policy issued by appellant company to appellee, to recover damages to a truck and trailer, which, according to the stipulation of the parties, amounted to $997.09, and the question presented on this appeal is whether the loss is payable under what is called the transportation clause, or under another clause of the policy called a collision clause. If liability attached under the latter clause, $100 was deductible from the damages sustained. If under the transportation clause, the full amount of the damage, not exceeding $2,500, was payable. Judgment was rendered for the sum sued for, and from that judgment is this appeal.

Appellant says two questions are presented. "First: Whether this loss was caused by collision or transportation. Second: Whether appellee is entitled to recover penalty and attorney's fees."

The answer to this second question depends upon the answer to the first. Appellant is liable for penalty and attorney's fees under Act 71 of the Acts of 1939 in applicable cases, but under numerous decisions of this court would not be liable for either the penalty or the attorney's fees if the insured recovers judgment for a sum less than the amount sued for. If, therefore, appellant is liable under the collision clause, but not under the transportation clause, the judgment is $100 in excess

of the liability and the penalty and attorney's fees are not collectible; but if liable under the transportation clause, the judgment must be affirmed in its entirety. The question for decision is, therefore, whether the transportation clause is applicable to this cause of action.

The circumstances out of which the cause of action arose is covered by a stipulation as to the facts, which reads as follows:

"It is stipulated and agreed by and between the plaintiffs and the defendant, that while policy of insurance number 60253 issued by the defendant to plaintiffs was in full force and effect the Ford truck and the one-and-one-half-ton trailer described in the said policy were damaged under the following circumstances:

"On March 29, 1943, about 3:30 p. m., Cecil Bettis was driving the Ford truck and trailer belonging to plaintiffs, approaching Calico Rock, Arkansas, and stopped at the White River to ferry. He had to wait for the return of the ferry from the opposite side of the river. The man in charge of the ferry instructed the driver of the truck to drive it onto the ferry as is the usual practice. When the driver of the truck got the front wheels of the truck on the ferry, the man in charge of the ferry motioned to him to stop, the driver did so applying his brakes. The unit of the truck and trailer was made up by the regular truck on the rear axle of which rested the front part of the tractor, which made three complete sets of wheels. The man in charge of the ferry wanted the driver to go more on the right side of the ferry. When the driver applied the brakes on the truck the stakes holding the ferry to the bank pulled up and released the ferry and the ferry twisted around and straight across the river. At the time the brakes were applied, the rear wheels of the truck were on the apron of the ferry. The ferry drifted out into the river, the apron on which the rear wheels of the truck were resting broke and when the ferry continued to drift out into the river the tractor went under pulling the truck in after it. The ferry did not sink and did not even break loose from the guy wire, and the accident was caused by the stakes

pulling out which permitted the ferry to float out into the river which was quite deep at that particular point.

"The cost of getting the truck and trailer out of the river and the damage caused by the accident above described amounted to $997.09."

The relevant portions of the policy sued on appear in paragraph B-1 and paragraph C. The first insures against "Loss or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile," and from such a loss $100 is deductible from the damages sustained.

If paragraph C applies there is no deduction and the full amount of the loss is payable. This paragraph C insures against loss " . . . by stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported on land or on water."

Appellant argues for the reversal of the judgment that " . . . when a truck insured under such policy runs off of a ferry and is precipitated into the water below, landing at the bottom of the river, there is a collision within the meaning of the policy." The argument, while plausible, is too tenuous for practical application in view of the presence of paragraph C above quoted. It may be that if the policy contained only paragraph B, above quoted, it would be held that the plunging of the car into the water and finally striking and resting upon the bottom of the stream was a collision, but even so, paragraph C cannot be eliminated or ignored.

It is argued, however, that paragraph C cannot be applied for the reason that the automobile was not injured by the "stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported on land or on water." This contention was sustained by the Ontario Supreme Court in the case of *Wampler* v. *British Empire Underwriters' Agency,* 54 Dom. L. R. 657, in a suit upon a similar policy, where it was said: "And the risk that the policy assumes is the stranding, burning, sinking, collision and derail-

ment of the conveyance containing the motor car while being transported by land or water.'' The facts in that case were that the plaintiff was crossing a stream on a ferry operated by means of a chain and he proceeded to drive his car off the ferry when it reached the land and ''while he was doing so, after the front wheels had reached the land the ferry began to move away with the result that the car dropped into the river.'' It was there said that this was not a risk insured against; but we refused to follow that holding in our case of *Importers' & Exporters' Ins. Co.* v. *Jones,* 166 Ark. 370, 266 S. W. 286. In so doing Justice Wood, speaking for this court, said:

''To be sure, by feather-edge refinements in the construction of language and a process of strained reasoning, the language of clause 'b' is susceptible of the construction given it by the Canada court, and in accordance with the contention of learned counsel for appellant. But such construction would not carry out the intention of the parties to the contract. It was manifestly their intention, by the language used, to cover all conceivable losses to the automobile while it was being transported, and they used the terms 'sinking, collision, stranding, burnings and derailment' as an enumeration of the methods by which such loss or damage might occur. When the subject-matter of the insurance and the language of the policy as a whole is considered, it certainly cannot be said that it was the intention of the company to limit its liability to the appellee for a loss or damage caused only by the sinking, collision, stranding, burning and derailment of the conveyance in which the car was being transported, rather than the 'sinking,' etc., of the car itself. The words 'sinking,' etc., were words of enumeration or description of the manner of loss of the car rather than a limitation of the liability to the manner of the description of the vehicle or means of transportation. Such we believe to be the plain, common-sense meaning of the contract. Any other view would lead to the rather absurd conclusion that, although the automobile was damaged or destroyed by 'sinking,' yet the appellant did not intend to be liable for such loss or damage unless the

boat in which the car was being transported was also lost or destroyed by 'sinking,' etc. If such was the meaning of the appellant, it should have used phraseology that would express it in plain terms, instead of ambiguous language indorsed in exceedingly fine print among multitudinous other provisions on the back of the policy."

We think there is nothing that need be added to this construction of paragraph C of the policy, and the judgment must be affirmed, and it is so ordered.

SMITH, J., (Opinion on Rehearing). Appellant insists in its motion for rehearing that it is not liable under its policy here sued on for the statutory penalty and attorney's fee under Act 71 of the Acts of 1939, which amended § 7670, Pope's Digest.

The effect of the amendatory act was to make the provisions of § 7670, Pope's Digest, applicable to marine, casualty, fidelity, surety, cyclone and tornado insurance policies, and the insistence is that the policy here involved does not come within any of these classifications.

We do not agree. This legislation must be construed in connection with Act 493 of the Acts of 1921 (§§ 7645 et seq., Pope's Digest) which was "An Act providing the kinds of insurance that may be written in this state, etc. . . ." Section 1 of this act provides that: "Corporations may be formed or enter this state to effect insurance for the following purposes:" and there follow fifteen paragraphs of this section which enumerate the kinds of insurance that may be written. The second paragraph reads as follows: "Marine Insurance—Vessels, freight, goods, moneys, effects and money loaned on bottomry and respondentia, against the perils of the seas and other perils usually insured against by marine insurance, including the risks of inland transportation."

The fifteenth paragraph reads as follows: "Other Casualty Insurance—Against loss or damage to property by any other casualty which may lawfully be the subject of insurance and which shall be specified in the articles of organization, and for which no other provision is made by law."

We think liability for the penalty and attorney's fee in this case may be predicated upon either of these paragraphs; under the second as a ''risk of inland transportation and navigation,'' or under the fifteenth paragraph as a loss or damage to property by casualty. There is here a loss resulting as a risk of inland transportation by water and the damage is a casualty risk.

At page 30, 11th C. J., it is said:

''Casualty Insurance. A term of quite frequent use, yet it cannot be said that its definition has been very accurately settled-by the courts. It is commonly held to include those forms of indemnity providing for payment for loss or damage to property (except from fire or the elements), resulting from accident or some such unanticipated contingency, and for loss through accident, or casualties resulting in bodily injury or death. The term, however, is more properly applied to insurance against the effects of accidents resulting in injuries to property.''

The policy sued on would cover a loss under either paragraph two or fifteen of the Acts of 1921, and the petition for rehearing is, therefore, denied.